IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE BENTON,<br><br>    Plaintiff,<br><br>    v.<br><br>CLARITY SERVICES, INC.,<br><br>    Defendant. | Case No. 16-cv-06583-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 65 |

Before the Court is defendant Clarity Services, Inc.'s ("Clarity") Motion for Summary Judgment, filed December 28, 2017. Plaintiff Joyce Benton ("Benton") has filed opposition, to which Clarity has replied, after which, Benton filed, with leave of Court, a surreply. The Court, having read and considered the papers filed in support of and in opposition to the motion, rules as follows.

## BACKGROUND

Clarity is a consumer reporting agency ("CRA") within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and, as such, "provides consumer information to assist customers assess risk, prevent fraud, and make credit decisions." (See Dunham Decl., filed Dec. 28, 2017, ¶ 5.) Between August 2015 and November 2015, Clarity disclosed consumer "information on Benton" (see id. ¶¶ 38-39) to MobiLoans, LLC ("MobiLoans") and Red Rock Tribal Lending, LLC ("Red Rock"), two customers with whom Clarity had contracts, which disclosures, Benton contends, were in violation of the FCRA.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

Benton brings her claim under 15 U.S.C. § 1681b, which provides, in relevant part:

(a) [A]ny [CRA] may furnish a consumer report under the following circumstances and no other: . . . (3) [t]o a person which it has reason to believe . . . (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer[.]

. . . .

(c)(1) A [CRA] may furnish a consumer report relating to any consumer pursuant to [§ 1681(a)(3)(A)] . . . in connection with any credit or insurance

2

> transaction that is not initiated by the consumer only if . . . (B)(i) the transaction consists of a firm offer of credit[.]

15 U.S.C. § 1681b. A "[f]irm offer of credit" is "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." See id. § 1681a(l).

Benton contends that Clarity, in light of information it received in the course of its investigation of MobiLoans and Red Rock, a process referred to by the parties as "credentialing," willfully violated § 1681b by furnishing consumer reports to those entities without "reason to believe" the information contained therein would be used only to make "firm offers" of credit. In support thereof, Benton sets forth several theories of liability, each of which the Court addresses in turn.

**A.   MobiLoans and Red Rock**

Benton first contends Clarity's credentialing of MobiLoans and Red Rock was deficient because, according to Benton, MobiLoans and Red Rock, both of which are arms of Native American tribes, did not waive their sovereign immunity, and, consequently, any certifications Clarity obtained as to those entities' use of Benton's information were unenforceable. The undisputed evidence, however, shows that MobiLoans' and Red Rock's contracts with Clarity, specifically, their End User Agreements ("EUA"), contain provisions stating, in each instance, that Clarity may, "in connection with the enforcement" of said agreement, "institute formal action, either by arbitration or commencing an action in a state court . . . or United States District Court." (See Dunham Decl., filed Dec. 28, 2017, Ex. H (MobiLoans EUA) ¶ 16; id. Ex. T (Red Rock EUA) ¶ 16.) Such provisions are sufficient to waive whatever sovereign immunity MobiLoans and Red Rock otherwise may have been entitled to assert. See C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 418 (2001) (holding tribe waived sovereign immunity where contract required all disputes thereunder be resolved by binding arbitration, with any arbitral award reduced to a judgment in court).

United States District Court
Northern District of California

Next, Benton argues that even if MobiLoans' and Red Rock's contracts were binding, the offers they made could not constitute "firm offers" because, if accepted, the offers would result in unenforceable contracts.[1] In particular, Benton points out that she is a California resident, that neither MobiLoans nor Red Rock is licensed in California to make consumer loans, and further, that the interest rates offered by both said entities exceed the rates allowed under California law. (See Opp. at 16:23-20:4 (citing Cal. Fin. Code §§ 22000 et seq. ("California Finance Lender Law") (requiring lenders obtain license from state commissioner and setting forth usury rates; providing if statute "willfully violated," contract for loan "shall be void"); Cal. Fin. Code § 23000 et seq. ("California Deferred Deposit Transaction Law") (same).)

The FCRA, however, requires no more than an offer that will not be retracted. See Sullivan v. Greenwood Credit Union, 520 F.3d 70, 76 (1st Cir. 2008) (holding "an offer of credit meets the statutory definition so long as the creditor will not deny credit to the consumer if the consumer meets the creditor's pre-selection criteria"); it does not require an offer that, if accepted, will result in an enforceable contract, see Luddit-Poehl v. Capital One Auto Finance, Inc., No. 06-CV-888-HEA, 2007 WL 2428044, *3 (E.D. Mo. Aug. 21, 2007) (holding, for purposes of § 1681b, court is "not required to engage in an analysis of whether the [offer of credit] constitutes a valid 'offer' under common law"). For example, although, as a general principle of contract law, a contract is void if its terms are too "uncertain and indefinite . . . in material particulars," see Ladas v. California State Auto. Assn., 19 Cal. App. 4th 761, 770 (Cal. Ct. App. 1993) (internal quotation and citation omitted), such failure of specificity is irrelevant for purposes of § 1681b, see

---

[1] Benton does not contend the subject offers were made with an intent other than to extend credit in accordance therewith. Indeed, the undisputed evidence shows MobiLoans and Red Rock intended to extend Benton credit if she accepted their offers. (See Pierite (Chairman of MobiLoans) Decl., filed Dec. 28, 2017, ¶ 19 (averring "[i]f Joyce Benton had responded to [MobiLoans'] firm offers and continued to meet the required credit criteria, MobiLoans would have extended her credit"); Dunham Decl., filed Dec. 28, 2017, Ex. V (Red Rock agreement with Clarity) ¶ 6.2 (prohibiting Red Rock from "withdraw[ing], modify[ing], or condition[ing]" any offer "except as permitted by the FCRA").)

4

1  Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053, 1059-60 (N.D. Cal. Mar. 23, 2006) (rejecting plaintiffs' argument that offer lacking specificity as to material terms could not constitute "firm offer" under § 1681b).

To the extent Benton may be contending disclosure of consumer reports to lenders who violate state licensing and usury laws conflicts with the purpose of the FCRA, such argument likewise is unavailing, as the FCRA is "designed to preserve the consumer's privacy." See Cole v. U.S. Capital, 389 F.3d 719, 725 (7th Cir. 2004); see also id. (noting "Congress apparently believe[d] that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalogs and sales pitches") (internal quotation and citation omitted) (alteration in original). Consistent therewith, § 1681b "calls for a firm offer of credit but not a *valuable* firm offer of credit." See Murray v. New Cingular Wireless Services, Inc., 523 F.3d 719, 722 (7th Cir. 2008) (emphasis in original); see also id. (holding whether "interest rate is said to be 'too high' or the line of credit 'too low' . . . is not relevant to the question posed by § 1681b(c)(1)(B)(i)"); Nasca v. J.P. Morgan Chase Bank, N.A., No. 06-CV-03472-SHS, 2007 WL 678407, at *4 (S.D.N.Y. Mar. 5, 2007) (holding if "Congress believes the statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in the privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute").

## B. Service Providers

Benton further argues that Clarity is in violation of § 1681b because, according to Benton, Clarity is in violation of § 1681e, which section requires CRAs to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b." See 15 U.S.C. § 1681e(a). In particular, CRAs must (1) require "prospective users . . . [to] identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose," and (2) "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a

5

consumer report." See id. Here, Benton argues, TCDS and SourcePoint, two "service providers" hired, respectively, by MobiLoans and Red Rock in connection with MobiLoans' and Red Rock's lending activities, had access to Benton's information, and, consequently, Clarity had a duty to separately credential those two additional entities in accordance with § 1681e. The Court disagrees.

Contrary to Benton's argument, neither the FCRA, nor any case authority addressing the FCRA, imposes a duty on CRAs to separately credential agents who are given access to information furnished to their credentialed principals. Rather, for purposes of § 1681b, a lender's agent is "sheltered by [the lender's] permissible purpose, and need not establish an independent purpose," See Weidman v. Federal Home Loan Mortg. Corp., 338 F. Supp. 2d 571, 577 (E.D. Penn. Sept. 30, 2004); see also Thao Pham v. Solace Financial, LLC, No. 12-CV-02413-RMW, 2012 WL 5471160, *2 (N.D. Cal. Nov. 9, 2012) (holding "an agent acts with its principal's permissible purpose").

Here, it is undisputed that Clarity, at the time it entered its contracts with MobiLoans and Red Rock, was informed that TCDS and SourcePoint had access to Benton's information solely in their capacity as agents of those two credentialed principals. (See Dunham Decl., filed Dec. 28, 2017, Ex. A (MobiLoans' Subscriber Application) (disclosing TCDS' association with MobiLoans); Reply Ex. C (Dunham Dep.) at 72:8-74:8 (testifying Clarity understood TCDS to be a third-party entity hired to provide services, such as "credit scoring modeling," to aid MobiLoans in its lending activities); Dunham Decl., filed Dec. 28, 2017, Ex. V (Red Rock's Prescreen Service Addendum to EUA) ¶ 3 (identifying SourcePoint as its "authorized agent in connection with the Prescreen Services");[2] see also MobiLoans EAU ¶ 6 (requiring MobiLoans to "limit use and dissemination of information from Clarity solely to use(s) as set forth" in agreement); Red Rock EAU ¶ 6 (requiring Red Rock to "limit use and dissemination of information

---

[2] The Addendum defines "Prescreen Services" as "[t]he process by which credit criteria is provided by [Red Rock] in order to receive a list of Prescreen Consumers," i.e., consumers who "will receive a 'firm offer of credit.'" (See id. ¶¶ 1.3, 1.6.)

6

from Clarity solely to use(s) as set forth" in agreement).)

The Court also finds unpersuasive Benton's citation to an FTC Statement requiring CRAs to obtain a "separate certification" each time a consumer report is requested by a "user that typically could have both permissible and impermissible purposes for ordering consumer reports (e.g., attorneys and detective agencies)," see 16 C.F.R. pt. 600, App. § 607(2)(C) (1990). In citing such requirement, Benton points out that attorneys and detectives typically act as agents, and concludes Clarity was required to separately credential TCDS and SourcePoint. Read in context, the cited language does not support Benton's contention. In particular, subsection 607(2)(C), which subsection contains the sentence on which Benton relies, provides as follows:

> Once the consumer reporting agency obtains a certification from a user (e.g., a creditor) that typically has a permissible purpose for receiving a consumer report, stating that it will use those reports only for permissible purposes (e.g., for credit or employment purposes), a certification of purpose need not be furnished for each individual report obtained, provided there is no reason to believe the user may be violating its certification. However, in furnishing reports to users that typically could have both permissible and impermissible purposes for ordering consumer reports (e.g., attorneys and detective agencies), the consumer reporting agency must require the user to provide a separate certification each time it requests a consumer report.

See id. As set forth above, the subsection applies only to those persons and entities that obtain consumer information from a CRA in the first instance; it does not apply to agents like TCDS and SourcePoint that are given access to such information after it has been furnished to the agent's certified principal.

Benton's reliance on In re Matter of Equifax Info. Servs, LLC, File No. 102-3252, 2012 WL 4955401 (F.T.C. Oct. 10, 2012), likewise is unavailing. There, the CRA, although on notice that the entity it had credentialed was reselling consumer report information to undisclosed third parties, failed to take any steps to identify or credential those third-party "end users." Id. at *2. Here, by contrast, MobiLoans and Red Rock certified that MobiLoans and Red Rock were the "end user[s]" of Benton's information and would "not resell" it, (see MobiLoans EUA ¶ 6; Red Rock EUA ¶ 6); Benton has produced no evidence showing that either MobiLoans or Red Rock breached those

7

agreements.

## CONCLUSION

For the reasons stated above, Clarity's motion is hereby GRANTED.

**IT IS SO ORDERED**

Dated: April 4, 2018

MAXINE M. CHESNEY
United States District Judge